NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220548-U

NO. 4-22-0548

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 2, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| TRACEY SIMS KOPECKY, | ) | Circuit Court of |
|    Petitioner-Appellee, | ) | Sangamon County |
|    and | ) | No. 19D374 |
| MATTHEW P. KOPECKY, | ) | |
|    Respondent-Appellant. | ) | Honorable |
| | ) | Matthew Maurer, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice DeArmond and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The appellate court affirmed the trial court's order allocating parenting time and decision-making responsibilities, dividing marital assets, and ordering payment of attorney fees because the order was not against the manifest weight of the evidence.

¶ 2  Petitioner, Tracey Sims Kopecky, and respondent, Matthew P. Kopecky, were married in 2015 and had twin children during the marriage, Au. K. and Al. K. (born June 2018). In June 2019, Tracey filed a petition for dissolution of marriage under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 *et seq.* (West 2018)).

¶ 3  In May 2022, the trial court entered an order (1) dividing the marital estate between the parties, (2) allocating primary decision-making and the majority of parenting time to Tracey, (3) deciding Matthew would be responsible for child support, (4) denying maintenance to either party, and (5) requiring Matthew to pay some of Tracey's attorney fees.

¶ 4    Matthew appeals, arguing the trial court's order was against the manifest weight of the evidence. Matthew contends the court erred by (1) allocating primary parenting time and parental responsibilities to Tracey, (2) failing to equitably divide marital assets, (3) ordering Matthew to pay Tracey's attorney fees, and (4) violating his due process rights. We disagree and affirm the court's order.

¶ 5                                    I. BACKGROUND

¶ 6                                    A. Procedural History

¶ 7    In June 2019, Tracey filed a petition for dissolution of marriage, alleging that the parties had twin boys during the marriage, Au. K. and Al. K. Tracey lived in Sherman, Illinois, and was self-employed as a dance instructor. Matthew lived in Glen Carbon, Illinois, and was employed full-time as a financial advisor. The petition alleged that no agreement existed regarding (1) support, (2) allocation of parental responsibilities, or (3) maintenance.

¶ 8    That same month, Tracey petitioned for temporary relief, asking the trial court to grant her, among other things, (1) "temporary primary significant decision-making authority regarding the children and the majority of parenting time with the minor children," (2) temporary maintenance, (3) temporary child support, and (4) interim attorney fees and costs.

¶ 9    In July 2019, the trial court entered an agreed upon temporary order. Regarding the children, Tracey and Matthew agreed to "observe a temporary, non-prejudicial schedule," which gave Tracey the majority of parenting time. Regarding parenting time, the agreed order remained in effect largely unchanged for the duration of the dissolution proceedings.

¶ 10    In September 2019, the trial court entered a temporary maintenance, child support, and contribution toward interim attorney's fees order in favor of Tracey. The court found "that an award of attorney's fees from the [*sic*] Matthew to Tracey is necessary to allow Tracey to

adequately participate in the litigation and level the playing field." The court also ordered a custodial evaluation at Matthew's expense.

¶ 11　　　　In February 2022, Matthew filed a notice of intent to claim dissipation of marital assets, asking, among other things, that the trial court recognize approximately $20,000 in loans that Matthew provided to Tracey to pay her premarital debts before she moved out of the marital residence. Later in February, Tracey filed a motion to strike the notice of intent to claim dissipation of marital assets. The court denied Tracey's motion as to the premarital debt claim but granted her motion as to the remaining dissipation claims.

¶ 12　　　　　　　B. The Evidentiary Hearing and the Trial Court's Order

¶ 13　　　　In March and April 2022, the trial court conducted hearings on the petition for dissolution of marriage. The court heard testimony from Tracey, Matthew, Jennifer Howard (Tracey's sister), and Dr. Brian Heatherton, who performed a custody evaluation of the parents. The parties also presented numerous exhibits to the court, including the results of the custody evaluation, various invoices, text messages, e-mails, financial documents, and personal affidavits.

¶ 14　　　　In May 2022, the trial court entered a written order in which it, relevant to this appeal, (1) granted Tracey primary decision-making authority and majority parenting time, (2) divided the marital assets, (3) ordered Matthew to pay Tracey's attorney fees, and (4) set forth a summary of the evidence presented, which we note is consistent with the record. Regarding the parties' testimony, "[t]he court found Tracey credible. The court did not find Matthew particularly credible."

¶ 15　　　　Because the parties do not dispute the evidence that was presented, just the weight the court gave to the evidence in reaching its conclusions, we will set forth only the relevant parts of the trial court's order.

¶ 16                         1. *Significant Decision-Making Authority*

¶ 17        The trial court first addressed decision-making authority, noting that it considered the statutory best interest factors listed in section 602.5(c) of the Act (750 ILCS 5/602.5(c) (West 2020)) when determining allocation of parental responsibilities. Relevant to this appeal, the court made the following findings regarding those statutory factors.

¶ 18        The children were well adjusted to Tracey's home and the community, at which they had lived for the majority of their lives, attending school, speech therapy, church, and recreational events. The court noted that, although the twins were also well adjusted to their home with Matthew, they would have to relocate from Sherman to Glen Carbon to reside with Matthew.

¶ 19        Tracey had attention-deficit/hyperactivity disorder, for which she took medication, and high blood pressure. Both parents had problems with alcohol consumption. Al. K. had seizures and both twins had severe speech issues. Heatherton's report indicated that Matthew may be seen as demanding, with a history of alcohol abuse, and Tracey had a rigid personality, tending to present herself in a favorable light. Heatherton opined that the children should remain with Tracey because they were heading into kindergarten and would benefit from the continuation of one home environment.

¶ 20        The parties were not able to effectively cooperate to make joint parenting decisions. However, "Tracey took the steps necessary to place the children in pre-school and provided the information to Matthew," selecting "a two-day [pre-school] program to accommodate Matthew's parenting time." She also secured speech therapy for the children. Both programs were positive for the twins. Both parents obtained medical treatment for the children, appropriate services as needed, and were attentive to the needs of the children. The twins' needs were well met by both parents.

¶ 21        Tracey lives 1 hour and 15 minutes' drive from where Matthew lives, and the parties had cooperated in transporting the children for custodial exchanges. The trial court noted that Tracey's decision to relocate from the marital residence to a different city "did not evidence a willingness to facilitate and encourage a close and continuing relationship between Matthew and the twins." However, the move allowed her to be close to her family, who the court found were a good support system for the twins. After her relocation, Tracy facilitated and encouraged a close and continuing relationship between Matthew and the twins, speaking of Matthew in "encouraging and positive terms."

¶ 22        The trial court found that (1) Matthew presented no testimony or evidence of similar actions on his part to facilitate and encourage a close and continuing relationship between Tracey and the twins, (2) Tracy had "the willingness and ability to facilitate and encourage a close and continuing relationship between Matthew and the twins," and (3) Tracey had "appropriately exercised decision-making with respect to medical care, speech therapy, pre-school and the other issues relating to the twins."

¶ 23        Ultimately, the trial court gave Tracey significant decision-making authority.

¶ 24                        2. *Parenting Time*

¶ 25        Regarding parenting time, the trial court considered the factors listed in section 602.7 of the Act (*id.* § 602.7), finding, in addition to what the court found regarding decision-making responsibilities, the following:

¶ 26        Prior to the parties' separation, they each were actively involved in taking care of the twins. Once the parties separated, Tracey was primarily responsible for the twins' care. The parties followed the agreed parenting schedules set in the July 2019 order. Tracey's sister testified that she and the maternal grandmother had family get-togethers and had a good relationship with

the twins. Matthew testified that his parents would visit from Wisconsin and his brother would visit from the St. Louis area when he had custody. The court found that Tracey's family was a resource for babysitting and her schedule was flexible when necessary. Matthew did not possess that same flexibility, having a demanding and time-intensive job. Tracey was also willing to compromise—for example, she wanted the twins to attend preschool five days a week, but she chose only two days so as not to interfere with Matthew's parenting time. The children were doing well at their placement with Tracey.

¶ 27        Ultimately, the trial court awarded Tracey majority parenting time "solely for the purposes of all State and federal statutes that require a designation *** of custody." The court generally set the parenting time schedule as follows, absent any agreement to the contrary:

> "Until the beginning of the 2022-2023 school year, Matthew is awarded parenting time every other weekend from Thursday at 5:15 PM *** until Monday morning *** at 9:30 AM. On the Thursday before Tracey's weekend parenting time, Matthew is awarded parenting time of pickup from school at 11:30 AM until 5:15 PM on Friday ***. ***

> Upon commencement of the 2022-2023 school year, Matthew is awarded parenting time every other weekend from Friday pickup from school until 5:15 PM on Sunday ***. ***

> On the Thursday before Tracey's weekend parenting time, Matthew is awarded parenting time for pickup from school until the return of the children to school on Friday morning, or, if there is no school on Friday, at 5:15 PM on Friday when the parties meet in Litchfield, Illinois to exchange the children. At all other times, the children shall be in the custody of Tracey.

Commencing the summer of 2023 until school resumes in the fall and each summer thereafter, Matthew is awarded parenting time every other weekend from Thursday at 5:15 PM *** until Monday morning *** at 9:30 AM. On the Thursday before Tracey's weekend parenting time, Matthew is awarded parenting time of ***11:30 AM until 5:15 PM on Friday ***."

¶ 28                                  3. *Division of Marital Assets*

¶ 29        Next, the trial court addressed the division of marital property, noting that it had considered the provisions of section 503 of the Act (*id.* § 503). The court reiterated that in March 2022, it allowed, in part, Matthew's "Notice of Intent to Claim Dissipation of Marital Assets" regarding approximately $20,000 he loaned Tracey prior to their separation. The court found that Tracey was the co-owner of a dance studio and earned about $3000 a month. Matthew was an independent contractor for an insurance company and earned $20,850 a month. Matthew had also been previously ordered to pay $2777 a month to Tracey for temporary child support and $3184 for temporary maintenance. Matthew still resided in the marital residence located in Glen Carbon.

¶ 30        The trial court found the marital estate to be valued at $433,117.81 and divided it equally between the parties, ordering Matthew to pay the difference of $77,462.34 to Tracey because he was awarded the marital home. The court did not order maintenance, opting to terminate the temporary maintenance that Tracey was receiving. The court noted that Tracey was able to save while she received temporary maintenance and child support.

¶ 31                                  4. *Attorney Fees*

¶ 32        The trial court also addressed attorney fees, writing the following:

            "The court grants Tracey's petition for contribution, in part. Matthew is ordered to pay $12,500.00 of Tracey's attorney's fees within 90 days of entry of

this memorandum, which the court finds to be reasonable. In setting this award of attorney's fees, the court has considered the criteria for the division of property pursuant to 750 ILCS 5/503."

¶ 33    This appeal followed.

¶ 34                              II. ANALYSIS

¶ 35    Matthew appeals, arguing the trial court's order was against the manifest weight of the evidence. Matthew contends the court erred by (1) allocating primary parenting time and parental responsibilities to Tracey, (2) failing to equitably divide marital assets, (3) ordering Matthew to pay Tracey's attorney fees, and (4) violating his due process rights. We disagree and affirm the court's order.

¶ 36              A. Allocation of Parenting Time and Decision Making

¶ 37    Matthew essentially argues that the trial court should have weighed the evidence differently and asks us to reweigh the applicable factors without deference to the court's findings. However, "[i]t is well settled that a reviewing court's function is not to reweigh the evidence or assess witness credibility and set aside the circuit court's decision simply because a different conclusion may have been drawn from the evidence." *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 51, 165 N.E.3d 501. Accordingly, we give the court's findings appropriate deference.

¶ 38                            1. *The Applicable Law*

¶ 39    Sections 602.5(c) and 602.7(b) of the Act provide lists of best interest factors for courts to consider when determining the appropriate allocation of parenting time and decision making. 750 ILCS 5/602.5(c), 602.7(b) (West 2020). To determine the allocation of parenting time and decision-making, the trial court is required to consider the credibility of the testimony, weigh the evidence, and exercise its discretion to determine the best interests of the child. See *In re*

- 8 -

*Custody of Sussenbach*, 108 Ill. 2d 489, 499, 485 N.E.2d 367, 371 (1985) ("[T]he trial court is in the best position to judge the credibility of the witnesses and determine the needs of the child."). " 'In child custody cases, there is a strong and compelling presumption in favor of the result reached by the trial court because it is in a superior position to evaluate the evidence and determine the best interests of the child.' " *Young v. Herman*, 2018 IL App (4th) 170001, ¶ 64, 92 N.E.3d 1070 (quoting *In re Marriage of Agers*, 2013 IL App (5th) 120375, ¶ 25, 991 N.E.2d 944).

¶ 40        Accordingly, a reviewing court will not disturb a trial court's order allocating decision-making responsibilities or parenting time unless the court's findings are against the manifest weight of the evidence. *Jameson*, 2020 IL App (3d) 200048, ¶ 47; *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 24, 80 N.E.3d 636.

¶ 41        "Under the manifest weight standard, an appellate court will affirm the trial court's ruling if there is any basis in the record to support the trial court's findings." *Id.* ¶ 24. " 'A decision is against the manifest weight of the evidence when an opposite conclusion is apparent or when the court's findings appear to be unreasonable, arbitrary, or not based on evidence.' " *Jameson*, 2020 IL App (3d) 200048, ¶ 47 (quoting *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 51, 129 N.E.3d 181).

¶ 42                              2. *This Case*

¶ 43        Matthew contends that the trial court "did not consider key evidence, from the [c]ourt's own appointed expert witness [(Heatherton)], and therefore the [c]ourt's ruling on parenting time and parental responsibilities, was an abuse of discretion"—chiefly, evidence of Tracey's alcoholism. In addition, Matthew asserts that the court improperly weighed the evidence.

¶ 44        Here, the trial court provided an extremely detailed summary and analysis of the facts that it found important and persuasive. Regarding the topic of alcohol consumption, we note

that the court must have considered that issue because, in its order, the court explains, "However, as a result of parties' past issues with alcohol, the court orders that neither parent use any alcohol or intoxicating substances, even in moderation, when the twins [are] present or within 24 hours prior to custody with the twins."

¶ 45 Furthermore, we reiterate that the weight to be given to evidence is to be left to the trial court's sound discretion. *Id.* Here, the court provided an extremely detailed summary and analysis of the facts that it presumably found important and persuasive. We will not nitpick the court's 34-page, single-spaced order for any missing information that Matthew thinks is important and reverse its decision.

¶ 46 Because the trial court's analysis for its allocation of decision making and parenting time is set forth in detail in the background of this order (*supra* ¶¶ 17-27), we need not repeat it here. Further, the record contains ample evidentiary support for the court's awarding of primary decision-making responsibility and parenting time to Tracey. Accordingly, the court's order is not against the manifest weight of the evidence.

¶ 47 B. Distribution of Marital Assets

¶ 48 Next, Matthew argues that the trial court did not equitably divide the marital assets because (1) the court should have considered "the over-payment of maintenance when considering division of marital property" and (2) the financial exhibits did not support an equal division of the marital estate. Notably, Matthew does not point to any factual or legal errors by the court, nor any authority supporting his position.

¶ 49 1. *The Applicable Law*

¶ 50 Section 503(d) of the Act provides that marital property must be divided in "just proportions considering all relevant factors." 750 ILCS 5/503(d) (West 2020). "While the

distribution need not be mathematically equal, it must be equitable." *In re Marriage of Roberts*, 2015 IL App (3d) 140263, ¶ 12, 53 N.E.3d 17. As the First District explained in *In re Marriage of Gabriel*, 2020 IL App (1st) 182710, ¶ 69, 157 N.E.3d 992 (quoting 750 ILCS 5/503(d) (West 2018)), the factors to be considered pursuant to 503(d) include, among other things " 'the relevant economic circumstances of each spouse'; 'the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties'; and 'the reasonable opportunity of each spouse for future acquisition of capital assets and income.' ".

¶ 51        Appellate courts review a trial court's division of marital assets for an abuse of discretion. *Roberts*, 2015 IL App (3d) 140263, ¶ 13.

¶ 52                                          2. *This Case*

¶ 53        We agree with Tracey that Matthew provides no persuasive authority that this court should alter the trial court's division of marital assets based on his alleged "over-payment" of maintenance. See Ill. S. Ct. R. 341(h) (eff. Oct. 1, 2020) (providing that briefs "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities"). Matthew's argument merely amounts to one more invitation to substitute our judgment for that of the trial court, which we once again decline. Likewise, we agree that Matthew did not make a sufficient showing that the court abused its discretion in its allocation of marital assets. Indeed, in its order, the court painstakingly set forth the evidence presented to it and considered all the appropriate statutory factors for dividing the marital estate.

¶ 54                                          C. Attorney Fees

¶ 55        Matthew also argues that the trial court erred by awarding attorney fees to Tracey because (1) she did not testify that she could not pay her attorney fees and (2) "the court did not make a finding as to which subsection of 750 ILCS 5/5-508, the court was awarding attorney's

[*sic*] fees." We disagree.

¶ 56                                    1. *The Applicable Law*

¶ 57          Section 508(a) of the Act governs the awarding of attorney fees in divorce proceedings and provides as follows:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. *** At the conclusion of any pre-judgment dissolution proceeding under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection. 750 ILCS 5/508(a) (West 2020).

¶ 58          The factors to consider here are the same as those set forth earlier in this order regarding section 503 of the Act (*supra* ¶ 50). Appellate courts review fee awards for an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13, 89 N.E.3d 296.

¶ 59                                    2. *This Case*

¶ 60          Matthew argues that the trial court's failure to state under which subsection of section 503 it was awarding attorney fees is fatal to its order, amounting to an abuse of discretion. However, we presume the court knew and followed the law absent evidence to the contrary. *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 91, 146 N.E.3d 285.

¶ 61          Here, Tracey brought her motion for contribution to fees pursuant to section 508(a). In her motion, she detailed her then outstanding fees and alleged that (1) Matthew had the ability to pay or contribute to her fees, (2) Matthew had far greater income and assets, and (3) she lacked the ability to pay her fees without utilizing limited assets.

¶ 62        We note that the trial court previously awarded interim attorney fees to "level the playing field" between Tracey's and Matthew's vastly disproportionate resources. Moreover, the court, in its written order, discussed in detail the parties' finances and analyzed their finances under the standards set forth in section 503 of the Act (750 ILCS 5/503 (West 2020)). Accordingly, we conclude the court did not abuse its discretion by awarding attorney fees to Tracey.

¶ 63                              D. Due Process Claims

¶ 64        Regarding Matthew's claim of due process violations, we conclude that Matthew's procedural due process rights were well protected. He received notice of the proceedings, was heard by the trial court, presented evidence, cross-examined witnesses, argued, and had an impartial trier of fact. Nothing in the record establishes, as Matthew argues, that "the trial court treated the parties disparately regarding admission of evidence, and in consideration of factors for allocation of parenting time and division."

¶ 65        In essence, all of Matthew's arguments on appeal can be summarized as an attempt to have this court reweigh the evidence and rule in Matthew's favor. However, the appellate court is not a court of "do-overs." It is a court of review, and we will not reverse a trial court's judgment simply because the result is not palatable to one of the parties.

¶ 66        In conclusion, we note that the trial court wrote a 34-page, single-spaced written memorandum, which contained great detail (1) regarding the evidence and (2) explaining the court's reasoning. We found the court's memorandum very helpful for resolving this case, and we thank the court for the extra effort it exerted by writing such a detailed memorandum.

¶ 67                              III. CONCLUSION

¶ 68        For the reasons stated, we affirm the trial court's judgment.

¶ 69        Affirmed.