2024 IL App (1st) 232416-U

No. 1-23-2416B

Order filed February 29, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | Nos.   21 CR 9148 |
| vs. | ) | 22 CR 2248 |
| | ) | |
| KENDRICK HUGHES, | ) | Honorable |
| | ) | Jennifer F. Coleman, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justice Hoffman concurred in the judgment.
Justice Ocasio specially concurred.

**ORDER**

¶ 1    *Held*:   The circuit court's order granting the State's detention petition affirmed where the court's findings that the State proved by clear and convincing evidence that the proof is evident or the presumption great that Hughes committed an eligible offense and that no condition or combination of conditions can mitigate Hughes's willful flight was not against the manifest weight of the evidence. The circuit court's order granting the State's petition for revocation is vacated where Hughes's bond had already been revoked and he was being detained without bail.

¶ 2    Defendant Kendrick Hughes appeals the circuit court's orders granting the State's petition for detention, pursuant to section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), and granting the State's petition for revocation, pursuant to section 110-6 of the Code (725 ILCS 5/110-6 (West 2022)). Hughes was arrested and charged prior to the effective date of Public Act 101-652 (eff. Jan. 1, 2023), commonly known as the Safety,

Accountability, Fairness and Equity-Today (SAFE-T) Act (Act).[1] For the following reasons, we affirm the circuit court's order denying pretrial release in case 22 CR 2248. We vacate the circuit court's order revoking Hughes's pretrial release in case 21 CR 1948. We remand with directions that the court consider (1) Hughes's pending petition to consider pretrial release, filed in the 2021 case, and (2) the State's verified petition for detention in the same case.

¶ 3                                I. BACKGROUND

¶ 4        Hughes was charged with intimidation, 720 ILCS 5/12-6(a)(1) (West 2020); cyberstalking, 720 ILCS 5/12-7.5(a)(1), (a)(2), (a-3)(1) (West 2020); and harassment, 720 ILCS 5/26.5-2(a)(1), (a)(2) (West 2020), 720 ILCS 5/26.5-3(a)(1) (West 2020) in case 21 CR 1948. He was ordered held on a $5,000,000 D bond[2] but was unable to post the requisite $500,000 and remained in custody. On February 23, 2022, Hughes was indicted and charged with harassment of a witness, 720 ILCS 5/32-4a(a)(2) (West 2022); cyberstalking, 720 ILCS 5/12-7.5(a)(2) (West 2022); and phone harassment, 720 ILCS 5/26.5-2(a)(2), (a)(4) (West 2022) in case 22 CR 2248. Three weeks later, the court increased the bond in 21 CR 1948 to no bail and ordered Hughes detained in both cases. On June 21, 2022, the court denied Hughes's motion to reconsider bond.

¶ 5        On November 16, 2023, Hughes filed a petition to grant pretrial release, stating that he has an address where he can reside on electronic monitoring (EM) in Cook County. Pursuant to sections 110-2 and 110-6.1 of the Code (725 ILCS 5/110-2, 110-6.1 (West 2022)), the State filed two verified petitions for pretrial detention on November 21, one in case 21 CR 1948 and one in case 22 CR 2248. The 21 CR 1948 petition alleged that Hughes committed an eligible offense

---

[1]"The Act has also sometimes been referred to in the press as the Pretrial Fairness Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public act." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n. 1. *Raoul* lifted the stay of pretrial release provisions and set an effective date of Sep. 18, 2023. *Id.* at ¶ 52; Pub. Acts 101-652, § 10-255, 102- 1104, § 70 (eff. Jan. 1, 2023).

[2]The court also ordered, as a special condition of bond, that Hughes have no contact with the victim or witnesses.

(harassment, cyberstalking, and intimidation) as listed in section 110-6.1(a)(8) of the Code and that he both poses "a real and present threat to the safety of any person or persons in the community," and has a high likelihood of willful flight to avoid prosecution. Specifically, the State relayed that:

"[Hughes] has known the victim for approx 15 years when she was attorney general. [Hughes] wanted the victim to file various lawsuits on his behalf. From 2014 – approx 2021 – [Hughes] resided in California. On April 24, 2021, [Hughes] called the victim indicating that he was on his way back to Chicago & he would have her executed. He threatened to come to her house, shoot people & torture her two daughters. [Hughes] traveled to Illinois at the beginning of May on Amtrak. [Hughes] called the victim on 6/5/21 & let her know he was in Chicago, in the building across from her work. [Hughes] was placed into custody on 6/7/21 at the Thompson Center."

¶ 6        The 22 CR 2248 petition for pretrial detention alleged that Hughes committed an eligible offense (harassment of a witness) as listed in section 110-6.1(a)(8) of the Code and that he both poses "a real and present threat to the safety of any person or persons in the community," and has a high likelihood of willful flight to avoid prosecution. The State alleged that:

"[Hughes] had a currently pending case at the time of these offenses, where he had traveled from California to Chicago. While in Cook County DOC custody, [Hughes] contacted Victim's place of work on numerous occasions. [Hughes] also sent mail from CCDOC to Victim."

¶ 7        Additionally, the State filed a petition for revocation of pretrial release in case 21 CR 9148, pursuant to section 5/110-6 of the Code. 725 ILCS 5/110-6 (West 2022). The petition alleged that while on pretrial release, Hughes was charged with harassment of a witness, cyberstalking, and harassment. The State asserted that "no condition or combination of conditions of release would

reasonably prevent [Hughes] from being charged with a subsequent Felony or Class A Misdemeanor."

¶ 8        The court conducted a hearing on the petitions on November 27. The State proceeded by proffer, explaining that:

"Judge, in this case, starting, I guess, with case number 21-CR-19148, the complaining witness in this case is Lisa Madigan. The alleged range of incidents begins on April 24th of 2021. [Hughes] had known victim or known about victim for approximately 15 years when the victim was the Attorney General. [Hughes] had initially began contacting the victim to file various lawsuits on his behalf believing the victim could help him with some contract law for money [Hughes] believes he was owed.

Around 2014 to 2015, [Hughes] had relocated to California and up until recently [he] had been, in fact, living in California. Prior to moving to California, [Hughes] – it appeared to [*sic*] believe that people were bothering him on a website and [Hughes] began leaving messages for the victim but never had a chance to meet her person. [Hughes] believed the victim had defamed him back in 2013, and had sent a violent letter threatening to kill her back in 2013. Around 2014, 2015 [Hughes] relocated to California and had been living there up until recently.

When the victim left the Office of the Attorney General, she began working at a prominent law firm as an attorney. Her office life became public at that time. It was around this point that [Hughes] began contacting the victim with this phone number in 2019, calling from different, various phone numbers, Judge. These phone numbers were California numbers or appear to have California number area codes. [Hughes] would call and victim would speak to [him] at length. Victim recognized [Hughes's] voice from numerous messages [he] had left her in the past.

4

Around April 24th of 2021, [Hughes's] messages began to become more frequent and he would begin calling her at all hours of the day and night leaving messages. There were approximately 20 voicemails left for the victim from [Hughes] on her direct line between April 24th and June 7th of 2021. The victim would listen to these messages herself, and contacted law enforcement after [Hughes] threatened victim and her family with physical harm. [Hughes] began or continued to leave messages, leaving messages, over hundreds over the last two years being the date range I had said of from 2019, I believe, until 2021.

[Hughes], while still living in California, called the victim on April 24th of 2021, indicating he was on his way back to Chicago and that he would have the victim executed. [He] threatened to come to the victim's house and shoot additional people and then torture her daughters. [Hughes] then sent an e-mail to the victim with a pin location showing that he was or indicating that he was on his way to Chicago.

I would note, Judge, it was unlikely that [he] was on his way to Chicago at this time due [to] information indicating he was still in California. Some of these voicemails that were left to *** victim included, I apologize for using coarse language, but, get my f*** money, I have to have over a thousand dollars or I'll start being on my way to Chicago – to Chicago to f*** people up, you better call, stop playing with my life, if you take anybody's side I'm going to try to have you executed.

Judge, on – at some point [Hughes] did, in fact, travel to Illinois on the Amtrak. [He], turns out, caused a disturbance on the Amtrak while en route to Chicago where [he] was constantly pacing or refusing to sit with other passengers. These – this is known from Amtrak information as well as there are tickets of [his] travel from California to Amtrak.

On June 7th of 2021, [Hughes] was placed into custody while at the Thompson

5

Center. [He] had two bags with him which contained three different cell phones. [Hughes] had placed a call to victim's office number, after he was arrested and left a voicemail indicating that he would come – where he could come and pick or where she could come and pick him up.

* * *

The new case stems from a date range of January 11th through January 26th of 2022, when [he] was in custody in the Cook County Department of Corrections. Between those dates [Hughes] had been using phones inside the jail to make calls to the victim's place of business. [He] would utilize three-way calling with an unknown offender to place the calls.

On November 11th, 2022, [Hughes] called the law firm, attempting to speak to the victim. Again on the 12th of January, 13th, 24th, and 26th [Hughes] attempted to contact the victim, leaving messages and many of these messages, [he] referenced the pending case he had against the victim.

I would also note, Judge, that since the initial case, [Hughes] has sent mail to Ms. Madigan from Cook County Department of Corrections, including a birthday card where he indicates a number of things such as – strike that, Judge. He did send her a letter from the jail."

The court and the State then engaged in the following colloquy:

"THE COURT: Okay. And so I'm clear, too, State, is it your understanding, I know you filed this under willful flight, is it your understanding that these charges, harassment, cyberstalking, and intimidation, are not detention eligible offenses based on dangerousness –

STATE: Judge –

6

THE COURT: – under the Pretrial Fairness Act?

STATE: – based on the statute, cyberstalking is not enumerated; stalking is. And I would, I guess, continue with my argument, Judge, but based on that, I think the way the statute is written, cyberstalking is not enumerated and neither is harassment.

I do feel like the intention of the legislature was passed to exclude cyberstalking, but based on the fact that [Hughes] has, as far as I can tell, no current ties to the State and only to Cook County, as far as the State is aware, to continue these threats with the victim, State believes that [Hughes] is a flight risk and that he would or could, potentially, travel back to California if he were to be released since he has no current ties to the State.

THE COURT: I just want to make sure that I understand though *** that you're not filing under the dangerousness because it's your understanding, and I read the statute and I've read all of the eligible offenses and I agree with you, cyberstalking is a completely separate charge from stalking, so my guess is they – I don't know if they intended to or not because who knows, but they certainly did not list it as a charge that could be detained based on dangerousness alone. That's your –

STATE: Yes, Judge.

THE COURT: Okay. I'm sorry, you have more of an argument –

STATE: No, Judge. I would just argue how it relates to flight. Judge, [Hughes] does have prior telephone harassment from 2007, where he had threatened an ex-girlfriend. He also has a prior threatening a public official arrest where he is alleged to have threatened a judge.

THE COURT: Okay. And what happened with that case? Is that here or in California?

STATE: It appears it was here, Judge. I believe it was just an arrest and I believe

may be dismissed."

¶ 9     Defense counsel argued that Hughes was charged with non-detainable offenses and noted that there is a fitness and sanity history that is associated with these cases. Counsel expounded that Hughes was evaluated by Forensic Clinical Services (FCS) in March 2023 and FCS opined that he was fit to stand trial with medication. Several months later, FCS opined that Hughes was legally insane at the time of both offenses. Further, counsel argued that Hughes has an address in Cook County where he could reside with his mother on EM. Counsel stated that Hughes would have no objection to GPS monitoring, EM, or any order of protection. Additionally, counsel contended that except for the June 7, 2021 phone call, the call logs indicate that all calls were made from California, and that cell phones were the only evidence recovered from Hughes at the time of his arrest. He carried no weapons, nor was there any indication he had access to any weapons. Counsel argued that, aside from his arrest, there was no evidence he took any actions to follow through on any of the threats he made, and that there are no threats associated with the 2022 case. Counsel informed the court that Hughes believed the victim had previously represented him and that he was being "catfished" by someone representing themselves to be Lisa Madigan. Lastly, counsel contended the State's flight concern was alleviated by the fact that Hughes has a Cook County address where he can reside on EM and the court could add the condition of medication compliance.

¶ 10     The State countered that, per Hughes's own words, "the only reason he came to Chicago was to execute Lisa Madigan." They argued that Hughes's travel to Chicago for this sole purpose indicated that his ties to Illinois are not strong enough to ensure Hughes's return to court or to satisfy the statutory requirements of the Act.

¶ 11     In ruling on the State's various petitions, the court noted: "I find it shocking that this charge is not a charge that's eligible for pretrial detention based on dangerousness." The court then granted

the State's petition for revocation of pretrial release in case 21 CR 9148, finding that the crimes alleged to have been committed in 22 CR 2248 were committed while the 21 CR 9148 case was pending. The court additionally granted the State's petition for pretrial detention in case 22 CR 2248, based on willful flight, noting:

> "the State has proven, by clear and convincing evidence, that the proof is evident or the presumption is great that [Hughes] committed an eligible offense under the section regarding willful flight which is (a)(8), in that no condition or combination of conditions set forth in 5/110-10(b) can mitigate willful flight unless [*sic*] restrictive conditions would not prevent his willful flight from prosecution.

> I do find it notable that [Hughes] did travel, specifically, from California to Chicago after conveying a threat against a former public official. I will note that he was found across the street from her workplace and the place that he was found at the Thompson Center is where the Attorney General – Attorney General's offices were. I know she was not the Attorney General at the time and I take the – I take the defense arguments regarding catfishing, for lack of a better word. However, it's still not justified to carry out any kind of threat against a person even if they did allege to be the Attorney General.

> But what I find most troubling is that this behavior continued long after he knew that he should have been leaving this person alone who, even as a former public official, especially as a former public official, deserves to be private. She deserves privacy and to feel safe without being harassed from somebody based on whatever he believed to be the case about her obligation to him when she was a public official."

The court did not make an oral or written ruling on the State's detention petition filed in case 21 CR 9148, and the court specifically stated, "I just want the record to be clear, the 21-case, it's revoked based on the new charges." Accordingly, the court ordered Hughes to remain detained.

On November 2, Hughes filed a timely notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13        On appeal, the Office of the State Appellate Defender filed a notice in lieu of a memorandum, choosing instead to stand on the arguments Hughes made in his notice of appeal. Utilizing the approved form from the Article VI Forms Appendix to the Illinois Supreme Court Rules (see Ill. S. Ct. Rs. Art. VI Forms Appendix R. 604(h)), Hughes's claim of error consisted of five checked boxes. Specifically, Hughes checked the following grounds for relief: (1) he was not charged with an offense qualifying for denial or revocation of pretrial release; (2) the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed the offenses charged; (3) the State failed to prove by clear and convincing evidence that he poses a real and present threat to the safety of any person(s) or the community; (4) the State failed to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat he poses; and (5) the court erred in its determination that no conditions would reasonably ensure his appearance for later hearings or prevent him from being charged with a subsequent felony or Class A misdemeanor.

¶ 14        As further support, Hughes argued that the State relied upon "words only allegations that [he] traveled to the State of Illinois," and failed to specifically allege that he had taken any steps or actions to follow through on "any of the alleged words only threats." Further, Hughes contended the court erred by failing to comply with the Act in that the "detention order entered in 21CR0914801 case fails where it does not provide any reasoning at all as to why the Court denied Defendant's pre-trial release." He claims the State did not allege any intentional conduct done with the intent to thwart prosecution. Lastly, Hughes argues there are numerous conditions that the court could have imposed instead of detention, which would "reasonably ensure [his] appearance in court as well as prevent [him] from being charged with subsequent criminal offenses."

¶ 15 The State filed a responsive memorandum, countering that the court properly exercised its discretion in finding the proof evident or the presumption great that Hughes committed intimidation and harassment of a witness, both of which are detainable offenses pursuant to section 110-6.1(a)(8) of the Code and that no condition could mitigate the threat of willful flight. The State argues that the proffered evidence established that Hughes, a resident of California, was the individual who engaged in a series of threatening behaviors against the victim. Moreover, Hughes continued to threaten the victim from jail following his arrest, even after he was placed on notice his conduct was against the law. Additionally, the State argued that the specific and articulable facts of this case demonstrate that Hughes, who does not live in Chicago but traveled here solely to execute the victim, is a flight risk. Lastly, the State contends it was not required to make a showing of dangerousness when proceeding under section 5/110-6.1(a)(8) of the Code but that it nonetheless proffered evidence demonstrating that Hughes poses a real and present threat to the victim.

¶ 16 In considering this appeal, this court has reviewed the following documents which Hughes and the State have submitted under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023): (1) Hughes's notice of appeal pursuant to the Act, (2) the supporting record, and (3) the State's memorandum in response to Hughes's notice of appeal.

¶ 17 A. Standard of Review

¶ 18 "Pretrial release is governed by section 110 of the Code as amended by the Act." *People v. Morales*, 2023 IL App (2d) 230334, ¶ 4 (citing 725 ILCS 5/110-1 et seq. (West 2022)). Pursuant to the Code, "it is presumed that a defendant is entitled to release on personal recognizance on the condition that the defendant shall attend all required court proceedings and the defendant does not commit any criminal offense, and complies with all terms of pretrial release." 725 ILCS 5/110-2(a) (West 2022). Under the Code, all persons charged with an offense are eligible for pretrial release

before conviction. *Id*. The court may deny pretrial release upon a verified petition by the State and following a hearing. 725 ILCS 5/110-6.1(a) (West 2022). It is the State's burden to prove by clear and convincing evidence that (1) the presumption is great or the proof evident that the defendant committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, based on the specific and articulable facts of the case, and (3) no condition or combination of conditions can mitigate the threat the defendant poses, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(e)(1)-(3) (West 2022). The standard "requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt." *In re D.T.*, 212 Ill. 2d 347, 362 (2004).

¶ 19    If the court determines that the State has met its burden and the defendant should be denied pretrial release, the court is required to make a written finding summarizing the reasons for denying pretrial release. *Id*. § 6.1(h)(1). If the court finds that detention is not appropriate, it can impose additional conditions if it determines such conditions:

"are necessary to ensure the defendant's appearance in court, ensure the defendant does not commit any criminal offense, ensure the defendant complies with all conditions of pretrial release, prevent the defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem solving courts." 725 ILCS 5/110-10(b) (West 2022).

There has been considerable disagreement amongst the appellate court as to which standard of review applies to pretrial release orders. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 21 (observing split regarding abuse of discretion, manifest weight of the evidence, and *de novo* standard under the Act). While the result of this case would be the same under any standard, we believe the appropriate standard of review is manifest weight of the evidence. The trial court's determination as to whether (1) the proof is evident or the presumption great that the defendant

has committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person(s) or the community, and (3) less restrictive conditions can mitigate that threat all involve factual findings. Our courts have consistently attached a manifest weight of the evidence standard of review to factual findings made by the trial court where the State's burden of proof is clear and convincing. See *People v. Pitts*, 2024 IL App (1st) 232336, ¶¶ 21-29 (citing cases where courts have applied the manifest weight of the evidence standard in various contexts). "Accordingly, we believe the appropriate standard of review for whether the State provided clear and convincing evidence as to the three elements necessary to justify pretrial detention is whether the trial court's [findings were] against the manifest weight of the evidence." *Id.* ¶ 29. "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." (Internal quotation marks omitted.) *People v. Chatman*, 2024 IL 129133, ¶ 34.

¶ 20 However, we believe an abuse of discretion standard properly applies to the trial court's ultimate decision regarding detention or conditions of release. See *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13 (applying "twofold" review: the manifest weight standard for the trial court's factual findings and abuse of discretion to the ultimate determination regarding pretrial release). An abuse of discretion occurs when the circuit court's " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' " *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)); see *People v. Johnson*, 2019 IL App (3d) 190582, ¶ 8.

¶ 21 B. Revocation of Pretrial Release in 21 CR 9148

¶ 22 Initially we note that although the State filed pretrial detention petitions in both of Hughes's pending cases, and a hearing was conducted on both petitions, the circuit court ultimately made a finding on only the 22 CR 2248 detention petition and failed to enter a ruling on the 21 CR 9148

detention petition. The court instead granted the State's petition for revocation of pretrial release in 21 CR 9148. Hughes does not argue on appeal that the court incorrectly granted the petition for revocation, but instead alleges that the court erred by failing to comply with the Act in that the "detention order entered in 21CR0914801 case fails where it does not provide any reasoning at all as to why the Court denied Defendant's pre-trial release." It is apparent that Hughes misunderstood the rulings the court made. Nonetheless, we will examine the court's ruling on the revocation of pretrial release, where it is clear Hughes is contesting his detention in this case. "Due to the unusual circumstances presented in this case and in the interest of obtaining a just result, we elect to address this issue." *People v. Lopez*, 2023 IL App (4th) 230962-U, ¶ 21.

¶ 23     Here, the trial court erroneously considered the State's petition to revoke Hughes's pretrial release. The State moved to revoke Hughes's pretrial release under section 110-6(a) of the Code. 725 ILCS 5/110-6(a) (West 2022). Pursuant to that section, a defendant's pretrial release may only be revoked if the defendant is charged with a felony or Class A misdemeanor that is alleged to have occurred while the defendant is on pretrial release. *Id*. In 21 CR 9148, Hughes was initially ordered held on a $5,000,000 D bond but remained in custody. On February 23, 2022, Hughes—while still in custody—was charged with harassment of a witness, cyberstalking, and phone harassment in 22 CR 2248. Consequently, the circuit court increased the bond in 21 CR 1948 to no bail. Hughes remained detained through the filing of the State's petitions for detention and revocation. There is no indication in the record that Hughes's bond in 21 CR 1948 was ever reinstated. Because Hughes was not on pretrial release at the time he was charged in 22 CR 2248, there was nothing to revoke. Consequently, section 110-6(a) of the Code (*id*.) was not applicable to the specific facts of Hughes's 2021 case. Accordingly, we vacate the circuit court's judgment revoking Hughes's pretrial release.

¶ 24                              C. Pretrial Detention in 22 CR 2248

¶ 25       For the following reasons, we do not believe the trial court's findings that the State proved by clear and convincing evidence that the proof is evident or the presumption great that Hughes committed an eligible offense and that there were no conditions or combinations of conditions that could have prevented Hughes's willful flight were against the manifest weight of the evidence. Further, the court did not abuse its discretion in determining that no condition or combination of conditions would reasonably ensure Hughes's appearance for later hearings or prevent him from being charged with a subsequent felony.

¶ 26                                    1. Eligible Offense

¶ 27       In his notice of appeal, Hughes checked the box alleging that he was not charged with an offense qualifying for denial of pretrial release. He offers no support for this conclusion. Section 5/110-6.1(a)(8) of the Code states that upon verified petition by the State, the court after holding a hearing may deny a defendant pretrial release if the person has a high likelihood of willful flight to avoid prosecution and is charged with either a felony described in subdivisions (a)(1) through (a)(7) or a felony offense other than a Class 4 offense. 725 ILCS 5/110-6.1(a)(1-8) (West 2022). Hughes was charged with harassment of a witness—a Class 2 felony, cyberstalking—a Class 3 or 4 felony, and phone harassment—a Class 4 felony.[3] From the plain language of the statute it is apparent that Hughes was charged with more than one qualifying offense.

           Next, Hughes checked the box alleging that the State failed to meet its burden that the proof is evident or the presumption great that he committed the offense charged. Likewise, no support is offered for this claim. The State proffered evidence at the hearing that Hughes had been in contact with the victim for approximately 15 years. He contacted the victim repeatedly while she was the

_____

[3]Phone harassment is generally a Class B misdemeanor. 725 ILCS 5/26.5-5(a) (West 2022). However, there are multiple circumstances which may elevate a violation of this statute to a Class 4 felony. *Id*. § 5/26.5-5(b).

Attorney General and in 2013 sent the victim a violent letter threatening to kill her. Hughes contacted the victim by telephone over one hundred times from 2019 to 2021 and he was arrested across the street from the victim's place of work, with three different cell phones that had been used to call the victim's office. The victim was familiar with Hughes and recognized his voice during these telephone calls and in the voicemail messages he left. Further, the State proffered that Hughes contacted the victim from within the Cook County jail, making several phone calls to the victim's law firm and mailing her a letter while in custody. Given this abundance of proffered evidence, we cannot say the court's finding that the proof is evident or the presumption great that Hughes committed the offense is unreasonable, arbitrary, or not based on the evidence present. *Chatman*, 2024 IL 129133, ¶ 34.

¶ 28                                    2. Dangerousness

¶ 29        Hughes next checked the box claiming that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person(s) or the community, based on the specific articulable facts of this case. In support, Hughes argues that the State alleged only allegations that he verbally threatened the victim but did not provide specific facts to demonstrate that he had taken any steps or actions to follow through on any of the threats.

¶ 30        The State in its petition for detention did allege that Hughes posed a real and present threat to the safety of the victim but did not specifically offer evidence or argument as to that allegation at the detention hearing. Further, the trial court did not base its detention order on these grounds. Indeed, the circuit court explicitly inquired of the State at the hearing if they were filing under willful flight because it was their understanding that the charged offenses were not detention eligible offenses based on dangerousness under the Act. The State answered affirmatively that cyberstalking and harassment were not eligible detention offenses based on dangerousness and

reiterated that they were instead arguing that Hughes is a flight risk. Consequently, we need not address this argument where the decision to detain Hughes was made based on his risk of willful flight, and not because of any danger he posed. See 725 ILCS 5/110-6.1 (West 2022).

¶ 31                                    3. Less Restrictive Conditions

¶ 32        Hughes additionally checked the box in his notice of appeal indicating that the State failed to meet its burden of proving that no condition or combination of conditions can mitigate his willful flight. He supports this claim by alleging that "the State did not present any allegations of intentional conduct done with the purpose to thwart prosecution." Further, he argues that there are numerous less restrictive conditions that could be imposed (such as EM, GPS monitoring, or an agreed no contact order) that would alleviate any flight concerns. The State counters that it presented evidence that Hughes (1) lives in California and not Chicago, (2) came to Chicago for the sole purpose of harming the victim, (3) has no legitimate ties to the State, and (4) continued to contact, threaten, and harass the victim even after his arrest. Last, Hughes argues that the court erred in its determination that no conditions would reasonably ensure his appearance in court or prevent him from being charged with a subsequent criminal offense.

¶ 33        The evidence presented by the State at the hearing demonstrates that—for years—Hughes has made harassing telephone calls and conveyed threats to the victim and the victim's family. By his own admissions, Hughes rode the train all the way from California to Chicago in 2021 solely for the purpose of "executing" the victim, and he was found outside the building where he believed she worked. Even after Hughes was in custody and charged in the 21 CR 19448 case, this failed to prevent him continually harassing and stalking the victim from within the walls of the jail. The specific and articulable facts of this case plainly demonstrate that there are no conditions that would prevent Hughes's risk of willful flight or thwart him from being charged with additional felonies or misdemeanors. Despite his arguments that GPS monitoring and orders of protection

could prevent these risks, he has demonstrated—through his direct actions—that orders of protection and detention are not sufficient to prevent him from committing further crimes. While Hughes contends that he could stay at his mother's Cook County residence on EM, he has resided in California since 2014. As noted, he only returned to Chicago in 2021 to harm the victim. Clearly, where even detention will not stop Hughes from violating the law, we cannot expect that any lesser conditions would be sufficient to prevent his willful flight to avoid prosecution. We find the court's determination that the State met its burden in proving that no lesser conditions could mitigate his willful flight was not against the manifest weight of the evidence. Further, we cannot say the court's determination that no conditions short of detention would ensure Hughes's appearance or prevent him from being charged with another felony is arbitrary, fanciful, or unreasonable, or that no reasonable person would take the view adopted by the circuit court.

¶ 34                                III. CONCLUSION

¶ 35        Following a thorough review of the record on appeal, for the reasons stated, the circuit court's order granting the State's detention petition in case 22 CR 2248 is affirmed, and the order granting the State's petition for revocation in case 21 CR 9148 is vacated, where Hughes's bond had already been revoked and he was being detained without bail. We remand with directions that the court consider (1) Hughes's pending petition to consider pretrial release, filed in 21 CR 9148, and (2) the State's verified petition for detention in the same case. The mandate in this case shall issue immediately. See *People v. Gil*, 2019 IL App (1st) 192419, ¶ 21.

¶ 36        Affirmed in part, vacated in part, and remanded with directions.

¶ 37 JUSTICE OCASIO, specially concurring:

¶ 38        In case number 21 CR 9148, I join in the court's decision to vacate the order granting the petition to revoke pretrial release and remanding with directions to consider Hughes's release petition and the State's detention petition.

¶ 39    In case number 22 CR 2248, I concur in the result. For the reasons persuasively given by Justice David Ellis, I would review the circuit court's order denying pretrial release *de novo*. See *People v. Whitaker*, 2024 IL App (1st) 232009, ¶¶ 79-138 (Ellis, J., concurring). Plenary review is called for by the significance of the right involved:

> "There is another reason *** why *de novo* review should be the appropriate standard of review for detention orders. Simply put, it is the gravity of the question involved. We cannot lose sight of the fact that a decision to detain an individual, to deprive someone of his or her freedom indefinitely before they have been convicted of anything and remain presumptively innocent, is a momentous one.

> A pretrial detention order is fundamentally different from an order that grants release with conditions, no matter how restrictive. Detention is an unconditional deprivation of the accused's 'strong interest in [pretrial] liberty.' *United States v. Salerno*, 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). And while the right to pretrial liberty, and thus release, is not absolute, make no mistake: the 'traditional right to freedom before conviction' is a constitutional right, grounded in the constitutional presumption of innocence. *Stack v. Boyle*, 342 U.S. 1, 4, 72 S.Ct. 1, 96 L.Ed. 3 (1951); see *Salerno*, 481 U.S. at 755, 107 S.Ct. 2095 ('In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'); *United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir. 1990) (in determining pretrial release, ' "[a] crucial liberty interest is at stake." ') (quoting *United States v. Delker*, 757 F.2d 1390, 1399 (3d Cir. 1985))." *Id.* ¶¶ 119-120.

In appeals from detention orders entered under the Bail Reform Act of 1984 (18 U.S.C. § 3141 *et seq.* (2018)), the majority of federal courts of appeals conduct "independent" or *de novo* review except as to any underlying factual findings. *Whitaker*, 2024 IL App (1st) 232009, ¶ 131 (Ellis, J., concurring). The minority apply what amounts to a manifest-weight standard. See *id.* ¶ 130. None of them treat the denial of pretrial release as a discretionary decision, and none have "ever seriously considered applying an abuse-of-discretion standard to the critical inquiries regarding detention." *Id.* ¶¶ 130, 135.

¶ 40    Here, the parties proceeded by proffer, so there are no findings of historical fact that require deference. See *id.* ¶¶ 116-117. Reviewing the detention order *de novo*, however, I would reluctantly affirm. I am not fully convinced that pretrial detention is appropriate, at least in the 2022 case. At the detention hearing, Hughes's attorney stated that at least one mental-health professional had opined that Hughes was legally insane at the time of the charged offenses in both cases. See 720 ILCS 5/6-2(a) (West 2022). Given that, it is likely that detention in the county jail is not the best option for Hughes or for society. But the record discloses no details about the nature of any psychological conditions Hughes may be suffering from. It does not explain what role, if any, his mental health played in either offense. It does not say whether the condition is being, or can be, treated. These questions have answers, and the circuit court could have—and, in my view, should have—tried to get them from the attorneys. I strongly encourage the parties to provide that information when the circuit court revisits its detention decision the next time Hughes appears before it. See 725 ILCS 5/110-6.1(i-5) (West 2022). On the record before us in this appeal, however, I agree that detention is warranted, so I concur in the result.