2024 IL App (1st) 240733-U

FIRST DIVISION
May 28, 2024

No. 1-24-0733B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee | ) ) | Cook County. |
| v. | ) ) | No. 2024110184301 |
| RONALD CROSBY, | ) ) | Honorable William Fahy, |
| Defendants-Appellant. | ) ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Lavin and Coghlan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court did not abuse its discretion in denying pretrial release.

¶ 2     Defendant-appellant, Ronald Crosby (defendant), appeals from the circuit court's March 20, 2024 order granting the State's petition for revocation of his pretrial release pursuant to section 110-6.1(a) of the Code of Criminal Procedure of 1963 (Code), as recently amended by Public Acts 101-652, § 10-255 and 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1(a)(1), (6) (West 2022)), and commonly referred to as "the Safety, Accountability, Fairness and Equity-

Today (SAFE-T) Act" or the "Pretrial Fairness Act" (Act). See also Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). On appeal, defendant contends that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or the community and that no conditions of release could mitigate the risk of that threat. For the following reasons, we affirm.

¶ 3                                  BACKGOUND

¶ 4      Defendant was arrested on March 19, 2024. Via amendment, defendant's concession and the circuit court's agreement, the State filed a verified petition seeking to deny pretrial release pursuant to sections 110-2, and 110-6.1(a)(1) of the Act (725 ILCS 5/110-2, 110-6.1(a)(1) (West 2023)), alleging that the he was being charged with unlawful use of a weapon by a felon (UUWF),[1] which is a detainable felony, and that his pretrial release posed a real and present threat to the safety of the community. The State further asserted that based on the specific and articulable facts of that case, no condition or combination of conditions that the court could impose would mitigate the risk of that threat.

¶ 5      At the hearing on the petition, the State proffered that on March 19, 2024, officers responded to a call of a person with a gun. Upon arriving at the victim's address, the victim told police that defendant, who was his girlfriend's husband, had been threatening him. The victim recounted that defendant was driving slowing down the street where he was and approached him,

---

[1] Originally, defendant was charged by felony complaint with one count of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2022)), and by misdemeanor complaint with one count of aggravated assault with a deadly weapon (720 ILCS 5.0/12-2-C-1) (West 2022)). As noted, at the subsequent hearing in this matter, the State sought leave to amend the complaint to UUWF instead of AHC, defendant agreed, and the circuit court allowed leave and made note of that amendment.

pointed a firearm at him while he (defendant) was in his vehicle, cocked it, and said that one of these days he will kill him while he (the victim) is parking his car. The victim was able to observe that the vehicle was a black Dodge Durango and he gave police the license plate information, which he said included temporary plates. Later, while on patrol nearby the area, an officer saw a black Dodge Durango matching the description, being driven by defendant. The officer noted the vehicle was missing the front registration but that there was a temporary license plate that further matched the information provided by the victim.

¶ 6    Upon pulling the vehicle over, defendant refused to exit at the officer's request. More officers were called, and it was affirmed that this was the identified vehicle. Officers asked defendant if there was a gun in the vehicle, and he replied that there was and that it was in the glovebox. The victim was then transported to the area where the vehicle had been curbed, and he identified defendant as the one who threatened him with a firearm. A firearm (a 9 mm luger), along with a magazine, were recovered from the glovebox, and the victim identified the gun as the one defendant had "racked and pointed at him" while slowly driving by him.

¶ 7    With respect to defendant's prior criminal history, the State pointed out that it was "extensive." He has 5 felony convictions: a 2006 conviction for aggravated battery to a police officer for which he received 3 years' imprisonment; 2 convictions in 2005 for obstruction of justice (30 months' imprisonment) and mob action (2 years' imprisonment); a 2003 conviction for aggravated battery to a police officer (3 years' imprisonment); and a 2000 conviction for possession of a controlled substance, for which he was originally sentenced to probation but then received 3 years' imprisonment after that was revoked. Defendant also has four misdemeanor convictions: disorderly conduct (2019), driving on a revoked license (2016), possession of marijuana (2016), and driving on a suspended license (2015). Defendant had been convicted

previously of AHC, but that conviction was later reversed and he received a certificate of innocence.

¶ 8     The State further proffered a LEADS background check that revealed defendant has two out-of-state warrants for his arrest (Wisconsin from 2023 and Indiana from 2017), both for failure to appear.  In addition to all this, the State informed the court that defendant currently has two active cases pending in DuPage County, both from earlier this year (2024), and both for which he is on pretrial release: one for battery and one for theft.

¶ 9     After its proffer, the State argued that the proof was evident and the presumption great that defendant committed the offense of UUWF because he, a convicted felon with an "extensive criminal history," was in possession of a firearm, the gun was found in the glovebox of the car he was driving and in which he was the sole occupant, and the victim was able to identify both defendant as the person who pointed the gun at him and the gun itself.  The State also argued that pretrial detention was necessary because defendant posed a real and present threat to the safety of the community based on the facts that he pointed a gun at someone, he was found in possession of that gun, he has crimes of violence in his background (including two convictions for aggravated battery), he has an active pending battery case in DuPage County, and he has four misdemeanor convictions.  The State further pointed out that, because of his two out-of-state warrants for failure to appear, in addition to his lengthy criminal history and the two pending DuPage County cases, it was evident he could not adhere to any conditions set by the court.

¶ 10     Pretrial services noted for the circuit court that defendant scored a 6 out of 6 on the new criminal activity scale and a 5 out of 6 on the failure to appear scale.  He had also received a flag for "new violent criminal activity."

¶ 11     After the State rested, defense counsel first argued that the State failed to show by clear

and convincing evidence that the proof was evident or the presumption great that defendant committed the charged offense, particularly, that he possessed the firearm at issue. Counsel asserted that officers did not find the gun on his person but, rather, in a locked glovebox, and that the car did not belong to him but, rather, to his girlfriend. Counsel also asserted that officers did not see him use the gun, that the only allegation of his possession and use of it comes from "someone who is involved in an intimate relationship with a not even yet ex-wife" of defendant with whom he is embroiled in a "very contentious divorce," and counsel disputed that defendant made a statement to officers that the gun was in the glovebox. Defense counsel next argued that defendant was not a clear and present threat to anyone in the community because the victim's motive "to tell this story" was suspect. Counsel further noted that, after conferring with pretrial services, the evaluations and scores calculated had included consideration of defendant's prior AHC conviction, which had since been reversed and a certificate of innocence issued but which has not yet been expunged from his record. Finally, counsel pointed out that defendant's last felony conviction was from 2006, he has no firearms convictions, his current pending cases in DuPage County are "just allegations," and the record "does not show any allegations of fleeing," so there are "certainly conditions of release" by which he could abide, such as electronic monitoring while staying at his girlfriend's home.

¶ 12    Finally, in mitigation, defense counsel offered that defendant is a 42-year-old lifelong resident of Cook County who lives with his girlfriend, "has a number of children" he supports, is involved in his church and has worked for the past six years as an unarmed security guard.

¶ 13    After hearing all the evidence, the circuit court first found that the State met its burden in proving by clear and convincing evidence that defendant had committed the detainable offense of UUWF. Focusing on the prime element of possession, the court reexamined both the State's

proffer and defense counsel's arguments and noted that officers responded to a call of a person with a gun who pointed it at the victim, cocked it and verbally threatened his life. Very soon thereafter, officers saw the vehicle matching the description given by the victim, curbed it, and defendant admitted that there was a firearm in the vehicle, which officers recovered in the glovebox and found to be loaded. The victim identified defendant as the person who pointed the firearm at him and threatened him with it, and he identified the firearm as being the gun he used to do so. The court acknowledged all of defendant's proffered points of contention, including that the gun was recovered in the glovebox, the car belongs to his girlfriend, and that there may be possible motives for the victim to be untruthful. However, after considering them, it concluded that the State had met the burden of proof that defendant was in (at least) constructive possession of the firearm, and that he has at least one (though the record shows five) prior felony convictions.

¶ 14    Next, the court found that the State met its burden in proving by clear and convincing evidence that defendant posed a real and immediate threat to the safety of others and the community. In this respect, the court stated it "can't overlook the violent nature of the offense where this defendant is alleged to have pointed a firearm after he cocked it, pointed it at a victim and threatened [him with] words to the effect of conveying a threat of killing the victim." It also took into account his five prior felony convictions and, though noting the most recent was from 2006, expressed these are "five reasons why this defendant should never be near a firearm let alone possessing a firearm and threatening another individual with a firearm."

¶ 15    Lastly, the court held that there were no conditions of release that it could impose that would mitigate the risk of threat to the community. The court stated that while it considered the pretrial services scores and evaluations, it noted both the evidence presented in mitigation by

defense counsel and, in particular, the certificate of innocence issued on his reversed AHC conviction that had yet to be expunged from his record, which "may have led to a somewhat more elevated pretrial score," counteracting those evaluations. The court stated that it was "balancing" all that with the nature and circumstances of this incident and defendant's criminal history which, though his most recent felony conviction was from 2006, he has two felony convictions for crimes of violence and four recent misdemeanor convictions, resulting in "a very extensive criminal history." The court found "even more concerning" the fact that at the time of this incident, defendant was on pretrial release for two separate and recent cases in DuPage County, one of which was a crime of violence, demonstrating that "[o]bviously, pretrial release with conditions [i]s a miserable failure" for defendant. Then, in additionally noting he has two out-of-state warrants for failure to appear, the court stated the only condition of release it could seriously consider would be electronic monitoring; but, based on everything it had heard, it believed "electronic monitoring would be woefully inadequate," as it "will not prevent this defendant from committing crimes of violence, *** from possessing firearms, *** and defendant has already shown that he is not capable of complying with conditions of pretrial release."

¶ 16    Based on all this, the circuit court granted the State's petition and ordered that defendant be detained pretrial. Defendant now appeals. See Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023).

¶ 17                                    II. ANALYSIS

¶ 18    Initially, defendant has elected to not file a memorandum in this appeal. See Ill. S. Ct. R. 604(h)(2) (eff. Dec. 7, 2023) (stating that "[t]he appellant may file, but is not required to file, a memorandum not exceeding 4500 words, within 21 days of filing of the Rule 328 supporting record"). Instead, he used the template approved for appeals brought under Rule 604(h); he checked only two boxes on the six-page form notice of appeal under the heading "Grounds for

Relief" and typed some further explanation which he attached thereto. The first box he checked alleged the State failed to meet its burden of proving by clear and convincing evidence that he "poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." Second, he checked the box alleging the State failed to meet its burden of proving by clear and convincing evidence that "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case." For the following reasons, we disagree with defendant, finding that the record before us does not support his contentions and plainly rebuts the assertions he makes in his form notice of appeal.

¶ 19    Pursuant to sections 110-2-1(a) and 110-6.1(e) of the Act, all defendants are presumed eligible for pretrial release. See 725 ILCS 5/110-2(a), 110-6.1(e) (West 2023). The State may detain an accused if it establishes that the charged offense is eligible for detention and then proves that: (1) the proof is evident or the presumption great that the defendant committed an offense which qualifies him for pretrial detention; (2) the defendant poses a real and present threat to the safety of any specific person or persons or the community, based on the specific articulable facts of the case; and (3) no condition or combination of conditions can mitigate that real and present threat. See 725 ILCS 5/110-6.1(e) (West 2023).

¶ 20    The State must prove each and every one of these three elements by clear and convincing evidence. *Id.* Clear and convincing evidence is "that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.) *In Re Tiffany W.*, 2012 IL App (1st) 102492-B, ¶ 12. It "is more than a preponderance but less than is required to convict an individual of a criminal offense." *Id.* If

the State fails to carry its burden on any of these three elements, the presumption of release remains, and the detention is unlawful.  See 725 ILC 5/110-6.1(e) (West 2022).

¶ 21    At present, our courts disagree as to the appropriate standard of review.  Some appellate decisions have concluded that all aspects of detention hearings under the Act are subject to abuse of discretion (see *People v. Whitmore*, 2023 IL App (1st) 231807, ¶¶ 18-19; *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11), while others have exclusively utilized the manifest weight of the evidence standard (see *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12; *People v. Rodriguez*, 2023 IL App (3d) 230450, ¶ 8).  Other courts have adopted a mixed approach, under which the circuit court's determinations that the State has proved by "clear and convincing evidence" that the defendant committed a qualifying offense, and that he is dangerous, is reviewed for the manifest weight of the evidence, while the ultimate decision regarding detention, or the imposition of conditions of release are subject to abuse of discretion review.  See *People v. Parker*, 2024 IL App (1st) 232164, ¶ 50; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶¶ 31-36; *People v. Hodge*, 2024 IL App (3d) 230543, ¶ 8; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10; *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Reed*, 2023 IL App (1st) 231834, ¶ 24, 31.  Still others have concluded that appeals under the Act should be reviewed *de novo.*  See *People v. Battle*, 2023 IL App (1st) 231838, ¶ 18; *Saucedo*, 2024 IL App (1st) 232020 (Ellis, J., specially concurring); see also *People v. Herrera*, 2023 IL App (1st) 231801, ¶¶ 22-24 (declining to decide what standard of review applies, but suggesting that even under *de novo* review, the case could be resolved based on legal error).

¶ 22    While we would affirm the instant detention order under any standard, we agree with the rationale of those decisions that hold that detention orders under the Act should be reviewed for an abuse of discretion.  See *Whitmore*, 2023 IL App (1st) 231807, ¶¶ 18-19; *Inman*, 2023 IL App

(4th) 230864, ¶ 11. An abuse of discretion occurs when the circuit court's " 'ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the circuit court.' " *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24 (quoting *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009)); see *People v. Johnson*, 2019 IL App (3d) 190582, ¶ 8. In addition, as the reviewing court, we may not substitute our judgment for that of the circuit court merely because we would have analyzed the appropriate factors differently. See *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 23    Turning to the merits of defendant's contentions, we begin by addressing whether the State proved by clear and convincing evidence that he was a real and present threat to the safety of persons or the community. See 725 ILCS 5/110-6.1(e) (2) (West 2023). For purposes of this element, the Act provides a non-exhaustive list of factors that the circuit court may consider in assessing a defendant's "dangerousness" including, *inter alia*: (1) the nature and circumstances of the offense; (2) the defendant's criminal and social history; (3) the defendant's access to weapons; and (4) whether the defendant committed any offense while on some form of release from custody. See 725 ILCS 5/110-6.1(g) (West 2023).

¶ 24    In the present case, defendant asserts that the State failed to meet its burden in this respect because his history shows he is not a danger since his last felony conviction was in 2006, the pretrial services score factored in his AHC conviction for which he had received a certificate of innocence but which had yet to be expunged from his record, and he "has no recent convictions for violent conduct." He further insists the State did not proffer that he discharged the firearm at issue and that complainant's account of what happened is suspect since he is in a relationship with his former wife. We disagree.

¶ 25    In finding that defendant posed a real and immediate threat to the safety of the community, the circuit court clearly and appropriately relied on the aforementioned statutory

factors. It found relevant the nature and circumstances of this offense, along with all the intricacies of defendant's prior criminal history, and the fact that he committed the instant crime while he had two separate, recent and pending charges in DuPage County (one of which included violence) for which he was on pretrial release. See 725 ILCS 5/110-6.1(g) (West 2023).

¶ 26    More specifically, the court's oral pronouncement rebuts all the challenges defendant makes regarding this point. That is, first, while he insists he has no "recent" convictions for violent conduct, the court stated it could not overlook "the violent nature" of *this* offense, which involved him, a convicted felon, driving slowly by the victim, cocking a firearm, and pointing it at him while verbally conveying a threat of killing him. The victim was not unknown to him; he is involved with defendant's soon-to-be ex-wife in what defendant himself admitted was a "very contentious divorce." Next, while defendant points out that his last felony conviction was somewhat remote in that it was from 2006, the record shows the court expressly noted this fact; the court weighed it and determined it did not overcome the more critical fact that his criminal history did not involve just one felony, but five, two of which were convictions for aggravated battery. Additionally, he has four more recent misdemeanor convictions. Finally, defendant's assertion that his pretrial services scores mentioned at the hearing factored in a prior AHC conviction for which he had received a certificate of innocence but which had yet to be expunged from his record is of no merit. To the contrary, the record shows the court made special note of this; it explicitly stated that it knew about defendant's certificate of innocence and it acknowledged that his services scores may have, thus, been skewed. However, this was just one of many factors it considered, and it simply did not outweigh its ultimate assessment that defendant, a convicted felon whom it specifically declared should not be near firearms or threatening someone with a firearm, posed a threat to persons and the community.

¶ 27    Under this record, and in light of the statutory factors considered by the circuit court, we fail to see how its determination that defendant posed a safety risk to the community could be construed as "unreasonable, fanciful or arbitrary." *In re Marriage Heroy*, 2017 IL 120205, ¶ 24. Accordingly, we conclude that the court did not abuse its discretion in finding that defendant posed a real and present danger to the community, requiring pretrial detention.

¶ 28    Second, and lastly, we address whether any conditions of release could have mitigated the risk of that threat. See 725 ILCS 5/110-6.1(e) (3) (West 2023). The State bears the burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community. See 725 ILCS 5/110-6.1(e) (West 2023). Section 110-10(a) establishes mandatory conditions that must be imposed for defendants released prior to trial, and section 110-10(b) provides various discretionary conditions the circuit court can impose. See 725 ILCS 5/110-10(a), (b) (West 2023). Defendant here contends he has "a record of stability and ability to comply with orders" and, as he proffered in mitigation, he lives with his girlfriend, he supports a child, he is a lifelong resident of Cook County, and he works full time as an unarmed security guard. He posits that based on this, "he would be able to be on electronic monitoring" and that "he has every reason and ability to follow the court's conditions of release." For the following reasons, we disagree.

¶ 29    In finding that no conditions of release could mitigate the threat to the community, the circuit court unequivocally listed everything it considered. First, it restated for the record all the evidence defendant presented in mitigation—exactly what defendant has again restated here—regarding his living situation, his child(ren), his residency in Cook County, and his employment. It also again acknowledged on his behalf the equivocality of his pretrial services scores, which were "somewhat more elevated" due to the mistaken consideration of the reversed AHC

conviction. The court then balanced this with the nature and circumstances of this incident and defendant's criminal history which it found to be "very extensive" and noted that it involved violence on more than one occasion. And, the court found "even more concerning" the fact that at the time of this incident, defendant was on pretrial release for two recent and separate cases, one of which was also a crime of violence, in DuPage County. This, coupled with defendant's two out-of-state warrants for failure to appear, led the court to believe, contrary to defendant's insistence, that he cannot follow conditions for release nor does he comply with court orders. The court considered that the only viable condition of release would be electronic monitoring; however, it immediately determined that, based on defendant's history, this option "would be woefully inadequate" and would not prevent him from "committing crimes of violence, * * * from possessing firearms, * * * and defendant has already shown that he is not capable of complying with conditions of pretrial release." The record in this case establishes that the court considered the nature of the allegations along with the circumstances surrounding defendant's arrest and his prior behavior before explicitly rejecting pretrial electronic monitoring as a viable condition of release. Therefore, we find nothing "arbitrary, fanciful or unreasonable" in the court's assessment that, based on everything presented, "pretrial release with conditions [i]s a miserable failure" for defendant. See *Heroy*, 2017 IL 120205, ¶ 24.

¶ 30                                  CONCLUSION

¶ 31    Accordingly, for the foregoing reasons, we affirm the order of the circuit court of Cook County denying pretrial release.

¶ 32    Affirmed.