2025 IL App (1st) 241855-U
Order filed: November 19, 2025

FIRST DISTRICT
THIRD DIVISION

No. 1-24-1855

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| *IN RE* THE MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| LISA JULIN, | ) | Cook County |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | No. 2019 D 1710 |
| v. | ) | |
| | ) | |
| JONATHON SIEGEL, | ) | Honorable |
| | ) | Julie B. Aimen, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   In this dissolution of marriage case, we vacate respondent's award of attorney fees under section 508(b) of the Illinois Marriage and Dissolution of Marriage Act and remand for a new attorney fee hearing. We affirm the award of the guardian *ad litem* fees.

¶ 2    Petitioner, Lisa Julin, filed for dissolution of her marriage to respondent, Jonathon Siegel. A guardian *ad litem* (GAL) was appointed for their minor child, S.S. The court entered a judgment for dissolution of marriage and also ordered petitioner to pay 60% of respondent's attorney fees from February 1, 2022, through December 7, 2023, pursuant to section 508(b) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508(b) (West 2022)) and

to pay 55% of the GAL's fees pursuant to section 506 of the Marriage Act (*Id.* § 506). We vacate the award of attorney fees and remand for a new attorney fee hearing. We affirm the award of the GAL fees.

¶ 3 The parties were married on July 5, 2014, and have one child, S.S. They lived in a condominium (the marital residence) that respondent had purchased prior to the marriage. Petitioner filed for dissolution of marriage on February 25, 2019. Less than one month later, on March 11, 2019, petitioner filed a petition for order of protection, listing herself and S.S. as the persons who needed protection from respondent. In support thereof, petitioner filed an affidavit attesting that respondent had repeatedly verbally and physically abused her in S.S.'s presence, causing both petitioner and S.S. to suffer from severe mental and emotional distress. The circuit court (Judge Thomas Carr) entered an emergency order of protection that same day, March 11, 2019.

¶ 4 On March 22, 2019, the court appointed a GAL for S.S. and ordered respondent to pay the GAL's $3000 retainer. The court subsequently ordered that going forward, respondent would pay 75% of the GAL's fees and petitioner would pay the remaining 25%.

¶ 5 On June 27, 2019, the court entered an agreed order extending the emergency order of protection for petitioner to September 20, 2019. The order removed S.S. as a protected party and provided that respondent would have supervised parenting time with her every Tuesday from 3:30 p.m. to 5:30 p.m. and every Saturday from 11 a.m. to 2 p.m. If either party wished to reschedule parenting time, they were required to give the other party seven days' notice. The order granted petitioner exclusive possession of the marital residence until October 1, 2019, or 45 days after respondent began paying an agreed-upon or court-ordered amount of temporary support to

petitioner, whichever was later. The court further ordered respondent to enroll in anger management therapy.

¶ 6    On August 5, 2019, petitioner filed a petition seeking temporary child support, maintenance, and attorney fees from respondent, claiming that during their marriage, respondent had been the primary wage earner and that he is currently an operating engineer with a construction company, earning approximately $125,000 per year. Petitioner alleged that in contrast to respondent she was unemployed and has no income to pay necessary living expenses or attorney fees.

¶ 7    Petitioner subsequently informed the court during a status hearing that respondent was in possession of S.S.'s backpack and refused to return it to her. On September 17, 2019, the court temporarily suspended respondent's visitation with S.S. until he returned the backpack. Respondent returned the backpack and the court reinstated visitation on September 20, 2019.

¶ 8    On November 13, 2019, respondent filed an emergency petition for petitioner to turn over possession of the marital residence to him. Respondent claimed that petitioner was not living in the marital residence and instead was renting it to persons unknown to him.

¶ 9    On November 14, 2019, the court conducted a hearing on petitioner's petition for temporary support and respondent's petition for turnover of the marital residence. The court entered an order allowing petitioner to continue renting out the marital residence for the months of November, December, and January, after which respondent would receive exclusive possession thereof on February 1, 2020. The court ordered respondent to pay petitioner $800 monthly in maintenance and child support from November through January. Beginning in February 2020, respondent was ordered to pay petitioner $2,200 per month in maintenance and $800 in child support.

¶ 10    During the hearing, petitioner claimed that respondent was in possession of S.S.'s winter coat and had refused to return it to her. The court ordered respondent to return S.S.'s winter coat during his supervised visitation on November 19 or tender her a new one. Respondent bought S.S. a new coat.

¶ 11    On February 18, 2020, respondent was granted unsupervised parenting time every Wednesday from 4 p.m. to 7 p.m. and every other Saturday from 10 a.m. until 1:30 p.m. On November 16, 2020, the court increased respondent's unsupervised parenting time on the weekends from 9 a.m. to 3 p.m.

¶ 12    On June 25, 2021, respondent filed an emergency motion to modify his parenting time and for other relief. Respondent alleged that petitioner was planning on taking S.S. out of town on vacation from June 28 through July 6, 2021, from August 2 through August 10, 2021, and from August 18 through August 20, 2021, all of which would severely restrict his already-limited parenting time. Petitioner did not consult with respondent prior to deciding to take these vacations and she had not given him the opportunity to reschedule his missed parenting time. Respondent contended that petitioner "constantly operates with no notice and just does whatever she wants when it comes to the parties' minor child regardless of how it impacts [his] parenting time" and he asked the court to increase his parenting time with overnights and a "50/50 parenting schedule." Respondent alleged that the GAL agreed that he should have increased parenting time including overnights.

¶ 13    Petitioner filed a response arguing that the vacation from June 28 to July 6, 2021, was to visit her family and that she had given respondent seven days' notice as required by the June 27, 2019, order. Petitioner contended that she had offered respondent makeup parenting time "each

and every time the parenting schedule has been changed," but that respondent "has never exercised the makeup parenting time—not once."

¶ 14    On June 30, 2021, the court entered an order finding that respondent's motion to modify parenting time was not an emergency and continued the matter for presentment on July 19, 2021. The record on appeal does not contain any transcripts of the July 19, 2021, proceeding or any orders entered on that date.

¶ 15    On March 30, 2022, Judge Julie Aimen was assigned to preside over this case, replacing Judge Carr. Judge Aimen conducted a pretrial conference that resulted in a judgment allocating parental responsibilities (allocation judgment) on August 18, 2022. The allocation judgment provided that from August 26 to October 14, 2022, respondent would have overnight parenting time every weekend alternating between Friday from 7 p.m. until Saturday at 7 p.m. one week, and on Saturday from 7 p.m. until Sunday at 7 p.m. the following week. Commencing October 14, 2022, respondent would have overnight parenting time every other weekend from Friday at 7 p.m. until Sunday at 7 p.m. The Lincolnwood police station was designated as the drop-off and pick-up location for visitations. Respondent also was granted visitations every Wednesday from 4 p.m. to 7:30 p.m. and on the first Monday of the month following petitioner's weekend from 4 p.m. to 7 p.m., with S.S.'s school designated as the pick-up location and the Lincolnwood police station designated as the drop-off location.

¶ 16    On August 25, 2022, respondent filed an emergency motion to modify the allocation judgment due to petitioner's interference with his parenting time. Respondent alleged that on Wednesday, August 24, 2022, he asked his sister, Rachel, to pick S.S. up after school at 3:15 p.m. because his work schedule did not permit him to arrive at the school until closer to 4 p.m. Rachel went to the school, but the principal refused to release S.S. to her, believing that the allocation

judgment did not authorize third-party pick-ups. Respondent arrived at the school at 3:58 p.m. (two minutes before his parenting time started) but learned that petitioner had arrived a few minutes earlier and taken S.S. home with her. Respondent messaged petitioner at 4:14 p.m. asking if he could pick S.S. up from petitioner's house, but she never responded. As a result, respondent was denied his allocated parenting time that day.

¶ 17    Respondent sought modification of the allocation judgment to allow his sister to pick S.S. up from school on Wednesdays. On August 29, 2022, the court granted the motion. On the same day, the court also entered an order discharging the GAL.

¶ 18    On September 14, 2022, the GAL filed his petition for fees, alleging that the parties owed him a total of $12,385.42, with $2,644.79 attributable to petitioner and $9,740.63 attributable to respondent.

¶ 19    On December 12, 2022, respondent filed a motion seeking a finding that petitioner had abused her parenting time by repeatedly failing to comply with the allocation judgment. Specifically, respondent alleged that petitioner: interfered with his parenting time on August 24 by taking S.S. home from school instead of waiting until 4 p.m. for him to pick her up; signed S.S. up for soccer during his October 3, November 7, and December 5, 2022, parenting time; told S.S. she could attend a block party during his parenting time on August 30, 2022; planned playdates for S.S. interfering with his ability to pick her up at the Lincolnwood police station; took S.S. to a Halloween party on October 28, 2022, which overlapped with his parenting time; took S.S. on a trip to Florida from November 19 through November 29, 2022, without providing him with the itinerary or allowing any contact between them during that time; and cancelled his parenting time on December 2, 2022.

¶ 20    The record on appeal contains no transcript of any hearing or order entered on respondent's motion; petitioner states in her reply brief that respondent "decided not to take [the December 12 motion] to hearing."

¶ 21    On February 22, 2023, respondent filed a motion for reallocation of the GAL's fees and costs, arguing that petitioner "has precipitated the majority of the litigation surrounding parenting time in this case" and should be required to pay no less than 50% of the GAL's fees and costs retroactive to the date of his appointment.

¶ 22    On March 16, 2023, the parties entered into a marital settlement agreement, in which petitioner and respondent each stipulated that they were able to be self-supporting through employment and/or property ownership and therefore waived and released any claims for maintenance against the other. The marital settlement agreement provided for a property settlement and for child support to be paid by respondent to petitioner in the amount of $850 per month, predicated on respondent's gross income of $9,239 per month and petitioner's "imputed gross income of $5,333" per month. Sections 12.1 and 12.2 of the marital settlement agreement also stated that both parties waive any right of contribution from the other for their own attorney fees pursuant to section 503(j) of the Marriage Act (750 ILCS 5/503(j) (West 2022)). However, section 12.3 stated that "[b]oth parties may seek contribution to attorney's fees and costs pursuant to 750 ILCS 5/508(b) and the reallocation of the [GAL] fees and costs incurred in this matter."

¶ 23    On March 17, 2023, the court entered a judgment for dissolution of marriage incorporating the parties' marital settlement agreement.

¶ 24    On April 21, 2023, respondent filed a petition for attorney fees pursuant to section 508(b) of the Marriage Act. Section 508(b) provides two prongs for the recovery of such fees. The first prong allows a party to recover his attorney fees when the court finds that the other party failed to

comply with an order or judgment without compelling cause or justification. 750 ILCS 5/508(b) (West 2022). The second prong allows for the recovery of attorney fees when the court finds that "a hearing under this Act was precipitated or conducted for any improper purpose." *Id.* When such a finding is made, "the court shall allocate fees and costs of all parties for the hearing to the party or counsel found to have acted improperly. Improper purposes include, but are not limited to, harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." *Id.*

¶ 25 In his attorney fee petition, respondent specified at the outset that he was seeking recovery of his attorney fees under the second prong due to petitioner having precipitated numerous hearings for improper purposes. Such hearings included those precipitated by her "baseless" petition for an order of protection and by her renting out the marital estate without telling him, as well as hearings precipitated by her "fabricated" support needs and her interferences with his parenting time.

¶ 26 On May 4, 2023, petitioner filed her own petition for attorney fees pursuant to section 508(b), alleging that she also was seeking recovery under the second prong due to respondent having precipitated numerous hearings for improper purposes, including: an emergency hearing on her order of protection; hearings to compel respondent to return S.S.'s winter coat and backpack; and hearings on various frivolous emergency motions filed by respondent.

¶ 27 The court conducted an evidentiary hearing on the parties' fee petitions, at which both petitioner and respondent testified.

¶ 28 Respondent testified that he is a construction worker making about $100,000 per year. He married petitioner on July 5, 2014, and they have one child, S.S. Petitioner filed her dissolution petition in February 2019 and her petition for an order of protection in March 2019. About one month later, the court appointed a GAL for S.S. and ultimately required petitioner to pay 25% of his fees and respondent to pay the remaining 75%. Respondent eventually agreed to a disposition

order removing S.S. as a protected party and requiring him to attend therapy for anger management. He successfully completed six therapy sessions.

¶ 29    The disposition order also granted petitioner exclusive possession of the marital residence. In early 2019, respondent learned that petitioner was not living in the marital residence but instead was renting it out to two persons who he did not know. He filed a motion for turnover of the residence to him. The court awarded him possession of the residence in February 2020, and he discovered that the floors were "trashed" and some of his belongings were missing.

¶ 30    Respondent testified that when petitioner filed for temporary maintenance and child support, she claimed that she had no income. The court awarded her $2,200 per month in maintenance and $800 per month in child support, which respondent paid for 14 months, based on her assertion of having no income. Petitioner subsequently filed financial affidavits showing that in fact she had dividend and investment income which she had not reported to the court.

¶ 31    Respondent testified to petitioner's frequent interference with his parenting time with S.S. He explained that the court awarded him one hour of supervised visitation for about 10 months, from April 2019 to February 2020. Thereafter, his visitation increased to three hours on weekends in addition to his one hour during the week. The GAL then recommended that S.S. complete five hours of therapy, after which she should be allowed to visit with respondent overnight. In response, petitioner cancelled S.S.'s therapy sessions to foreclose the overnight visits. In August 2022, though, the allocation judgment granted respondent overnight visitation. Petitioner has frequently interfered with his visitations before and after the allocation order by refusing to drop S.S. off at designated drop-off locations, cancelling some visits without notice, taking out-of-town vacations with S.S. "quite often" during his allotted parenting time, and refusing to allow him makeup visits. Petitioner also has prevented respondent from visiting S.S. on Father's Day. Petitioner's frequent

interferences with respondent's visitations has compelled him to file multiple motions seeking enforcement of the visitation schedules.

¶ 32    Petitioner testified that prior to the marriage, she sold financial products and services and made about $23,000 per year. She has not worked full-time since the marriage but she has dividend and investment income and an estate valued at over $680,000 as of July 2022. Petitioner filed for divorce in February 2019 and then for the order of protection one month later because respondent verbally and physically abused her to the extent that she and S.S. were in fear for their lives. She later agreed to remove S.S. from the protective order in June 2019 and to permit visitations with respondent as long as those visits were supervised and he completed anger management therapy. Petitioner did not object to the GAL's recommendation two years later that respondent be allowed overnight visitation with S.S. following her completion of therapy sessions, nor did she object to the allocation order granting him such visitations. S.S. completed therapy and went on overnight visits with respondent.

¶ 33    Petitioner testified that from 2019 to 2021, she rescheduled approximately eight of respondent's visits with S.S. per year due to various illnesses or the need/desire to visit family out of state. Each time, she gave respondent the allotted seven days' notice as required by court order and offered him makeup visitation dates. Respondent himself cancelled 10 visitations with S.S. and never requested any makeup parenting time. When asked whether she had ever prevented respondent from seeing S.S. on Father's Day, petitioner explained that the only Father's Day he missed with S.S. was in 2020, when Judge Carr gave petitioner permission to take S.S. to her niece's dance competition. Respondent otherwise celebrated Father's Day with S.S. in 2019, 2021, 2022, and 2023.

¶ 34    Petitioner testified that in September 2019, respondent's parenting time was suspended for three days for not returning S.S.'s backpack to her. In November 2019, respondent violated a court order requiring him to promptly return S.S.'s winter coat. Respondent explained, though, that the reason he did not return the coat is because he had locked it in a safe at the marital residence, which was in the exclusive possession of petitioner. Respondent eventually bought S.S. a new coat.

¶ 35    With regard to respondent's allegations that she had failed to disclose her dividend and investment income prior to securing temporary support and maintenance, petitioner testified that in fact she had provided respondent with multiple bank statements and a financial affidavit which together accurately disclosed her investment income.

¶ 36    Following the hearing, Judge Aimen entered an order on November 27, 2023, expressly noting that "[t]he bulk of the litigation predates [her appointment to the case]; therefore, many of the issues in controversy that are alleged to have been generated for an improper purpose, for harassment or delay of proceedings were not conducted before this judge." As such, the judge stated:

> "This Court will not review the [attorney] fees generated before she took the bench on this calendar as each side has presented testimony on incidents that occurred outside of this Court's ability to weigh the demeanor and credibility of the witnesses at the time of the incident. The Court will reallocate the fees for the period commencing from February 1, 2022 forward. It is this Court's belief that [petitioner's] attempts to frustrate [respondent's] parenting time caused numerous filings with the court and enhanced the litigation for an improper purpose. Therefore, [petitioner] shall be responsible for sixty (60%) percent of the fees incurred by [respondent] during said time."

¶ 37    With respect to the GAL fees, the judge stated:

"[Petitioner's] actions served to slow down Respondent's ability to have parenting time and to have overnight parenting time. This Court believes that each party played a role in attenuating the litigation here. Therefore, the Court will reallocate the fees; [petitioner] shall pay 55% of the fees and [respondent] shall pay 45% of the fees. Said reallocation shall be retroactive to the engagement of [the GAL], including the initial retainer."

¶ 38    On December 7, 2023, the court entered an order setting forth the exact amounts of monies petitioner was required to pay for the attorney and GAL fees. The order began by stating that respondent's petition for attorney fees pursuant to section 508(b) and his motion for reallocation of the GAL fees is granted and that petitioner's petition for attorney fees pursuant to section 508(b) is denied. The order then stated that it was reallocating the payment of attorney fees such that petitioner was now required to pay 60% of respondent's total attorney fees from February 1, 2022, through December 7, 2023. Respondent incurred $251,922.46 in attorney fees during that time-period, meaning that petitioner was required to pay 60% thereof, amounting to $151,153.48.

¶ 39    With respect to the payment of the GAL fees, the order stated that it was reallocating the payment of those fees such that petitioner was now required to pay 55% of the fees (including the retainer) and respondent was required to pay the remaining 45%. The total fees incurred by the GAL from the date of his appointment until his discharge were $47,083.33. Accordingly, per the order, petitioner was required to pay 55% thereof, amounting to $25,895.83, and respondent was required to pay the remaining 45%, amounting to $21,187.50. As of the date of the order, petitioner had paid $10,244.75 to the GAL, and respondent had paid $36,838.58 to the GAL, meaning that respondent had overpaid by $15,651.08. To "effectuate the Ruling of this Court," petitioner was ordered to "directly pay 15,651.08 to [respondent] within seven days of the date of the entry [of] this Order."

¶ 40 On September 5, 2024, the court entered an order pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) finding that no just reason exists to delay the enforcement or appeal of the December 7 order. Petitioner filed a timely notice of appeal on September 18, 2024. On appeal, petitioner argues only for reversal of the portion of the order awarding respondent his attorney fees and GAL fees; she makes no argument for reversal of the order denying her petition for attorney fees and therefore has forfeited any review thereof. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 41 First, petitioner contends that the court applied the wrong standard when awarding attorney fees to respondent. Respondent sought attorney fees under section 508(b) of the Marriage Act, which provides in pertinent part for such fees when the court finds that a hearing under the Marriage Act was "precipitated or conducted for any improper purpose" including, but not limited to, "harassment, unnecessary delay, or other acts needlessly increasing the cost of litigation." 750 ILCS 5/508(b) (West 2022). Petitioner argues that instead of applying the section 508(b) standard by considering whether she precipitated a hearing for an improper purpose, the court instead awarded respondent his attorney fees under the contribution standard set forth in section 503(j) of the Marriage Act (750 ILCS 5/503(j)(West 2022)), which allows for an award of contribution to the other party's attorney fees "based on the criteria for division of marital property under this Section 503." *Id.* Petitioner contends the contribution award was error, as sections 12.1 and 12.2 of the parties' marital settlement agreement expressly waived any such section 503(j) contribution for attorney fees.

¶ 42 We will not disturb the trial court's decision to award attorney fees absent an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13. However, determining whether the court applied the correct standard when it awarded the fees requires us to interpret sections 503(j) and 508(b) of the Marriage Act. Construction of a statute is a legal question subject to *de novo*

review. *Id.* When interpreting a statute, we ascertain and give effect to the legislative intent, looking first to the plain language of the statute. *Id.* Where the statutory language is clear and unambiguous, we apply the statute without resort to other aids of construction. *Id.* A court may look to dictionary definitions to derive the plain and ordinary meaning of statutory terms. *In re Bailey*, 317 Ill. App. 3d 1072, 1086 (2000).

¶ 43    We begin our analysis by examining the section 503(j) standard for awarding contribution to attorney fees. Then we consider whether the court here actually utilized that standard in its fee order.

¶ 44    Section 503(j) instructs the court, when ruling on a party's petition for contribution to attorney fees, to consider the criteria for dividing property in subsection 503(d), including: each party's contribution to the acquisition of marital or non-marital property; the dissipation by each party of the marital property; the value of the property assigned to each party; the duration of the marriage; the relevant economic circumstances of each party; any obligations and rights arising from a prior marriage; any prenuptial or postnuptial agreement; the age, health, occupation, amount and sources of income of each party; the custodial provisions for any children; whether the apportionment is in lieu of or in addition to maintenance; the reasonable opportunity of each party to acquire future capital assets and income; and the tax consequences of the property division. 750 ILCS 5/503(d) (West 2022).

¶ 45    Petitioner argues that "it is clear the Court awarded fees to [respondent] under the contribution standard of 503(j), not under 508(b)." In the November 27 and December 7 orders awarding respondent his attorney fees, though, the court never cited section 503(j) or mentioned any of the section 503(d) criteria for dividing property. Instead, the court cited section 508(b) and expressly considered whether the parties had engaged in litigation tactics for an improper purpose

as defined by section 508(b), such as "for harassment or delay of proceedings." On this record, then, there is no support for petitioner's contention that the trial court violated the marital settlement agreement by awarding respondent his attorney fees under section 503(j); rather, the court clearly awarded respondent his attorney fees under section 508(b), which it was allowed to do under section 12.3 of the marital settlement agreement.

¶ 46    Petitioner's next contention is that the court failed to comply with the requirements of section 508(b) when awarding respondent his attorney fees. As discussed, section 508(b) allows for the recovery of attorney fees under two prongs, first when the court finds that a party's failure to comply with an order was without compelling cause or justification, and second when the court finds that a hearing under the Marriage Act was precipitated or conducted for an improper purpose. Petitioner first argues that the award of attorney fees under section 508(b) was error because the court made no finding under the first prong that she failed to comply with any order without compelling cause or justification. However, the record shows that respondent did not seek, and the court did not order, attorney fees under the first prong of section 508(b). Instead, respondent sought attorney fees only under the second prong, which the court granted. Accordingly, we proceed to consider whether the grant of respondent's petition for attorney fees under the second prong of section 508(b) was in error.

¶ 47    Petitioner argues that the court erred by awarding respondent attorney fees under the second prong of section 508(b) because the fees were unrelated to any hearing that was precipitated or conducted for an improper purpose. Petitioner argues that under its express terms, the second prong of section 508(b) only allows for the award of attorney fees generated by such an improper hearing. Our review of this issue again requires us to interpret section 508(b), which involves a legal question subject to *de novo* review. *Heroy*, 2017 IL 120205, ¶ 13.

¶ 48     Initially, though, respondent argues that petitioner is estopped from arguing that the second prong of section 508(b) only allows for the award of attorney fees generated by a hearing precipitated or conducted for an improper purpose, because in her own section 508(b) fee petition that was brought under the second prong, she argued for an award of fees unrelated to any such hearing. Respondent cites *In re Stephen K.*, 373 Ill. App. 3d 7, 25 (2007), which held that "A party is estopped from taking a position on appeal that is inconsistent with a position the party took in the trial court."

¶ 49     Careful review of petitioner's section 508(b) petition reveals that although she mentioned certain conduct by respondent outside of and unrelated to any court hearings, she specifically sought recovery of attorney fees for the "numerous *hearings* in this matter that resulted from [respondent's] attempts to harass [petitioner], to unnecessarily delay the proceedings, and to unnecessarily increase the cost of litigation." (Emphasis added.) Elsewhere in her petition, petitioner reiterated that respondent had "precipitated multiple hearings in this matter for improper purposes." During the hearing on her petition, she stated, "[U]nder section 508(b), it is the movant's burden to show the other party precipitated or conducted a hearing for an improper purpose." Thus, contrary to respondent's argument, petitioner has consistently maintained both in the trial court and on appeal that the second prong of section 508(b) allows for recovery of attorney fees when such fees are incurred for hearings precipitated or conducted for an improper purpose. We find no estoppel.

¶ 50     Turning to the merits of petitioner's argument, we note that the language of section 508(b) supports her contention that attorney fees may be awarded under the second prong only where a hearing under the Marriage Act was "precipitated or conducted for any improper purpose." 750 ILCS 5/508(b) (West 2022). The parties dispute the meaning of "precipitated" as used in section

508(b), with petitioner arguing that it means attorney fees may only be recovered for the fees and costs associated with an actual hearing that was caused to happen for an improper purpose, whereas respondent argues that attorney fees may be recovered under section 508(b) for general "misconduct" which increased the cost of litigation, even in the absence of a hearing. Although the Marriage Act does not define the term "precipitated," its dictionary definition is "To cause to happen, esp. suddenly or prematurely." The American Heritage College Dictionary 1096 (4th ed. 2004). Clearly, then, the use of the word "precipitated" in the second prong of section 508(b) shows a legislative intent to allow for the recovery of attorney fees only for the fees associated with a hearing that was *caused to happen* for an improper purpose.

¶ 51    We further note the additional language in section 508(b) stating that after finding that a hearing was precipitated or conducted for any improper purpose, "the court shall allocate fees and costs of all parties *for the hearing* to the party or counsel found to have acted improperly." (Emphasis added.) 750 ILCS 5/508(b) (West 2022). This language clearly denotes the legislative intent to limit the recovery of attorney fees under the second prong of section 508(b) to only those fees associated with the hearing that was precipitated or conducted for an improper purpose.

¶ 52    Respondent argues that *Eisterhold v. Gizewski*, 2022 IL App (1st) 210490, compels a different result, contending that in *Gizewski* we affirmed the grant of attorney fees under the second prong of section 508(b) even where some of the fees were based on conduct that drove up litigation costs unrelated to any hearing. Careful review of *Gizewski* reveals that we never addressed the issue raised therein regarding the awarding of section 508(b) fees, finding that the issue was forfeited as it was not raised in the trial court. *Id.* ¶ 42. Accordingly, *Gizewski* provides no support for respondent's argument that attorney fees may be awarded under the second prong of section

508(b) for general misconduct that increased the cost of litigation, even in the absence of a hearing. As discussed, respondent's argument runs directly counter to the clear language of section 508(b).

¶ 53    In the present case, though, the trial court awarded respondent substantial attorney fees under section 508(b) that had nothing to do with any hearings, let alone any hearings that were precipitated or conducted for an improper purpose. Specifically, the court's order entered on December 7, 2023, which granted respondent's petition for attorney fees under the second prong of section 508(b), stated that "[respondent's] attorneys' fees incurred from February 1, 2022 through the date of entry of this Order shall be reallocated such that [petitioner] *shall pay for 60% of the total fees* incurred by [respondent] during that period." (Emphasis added.) Respondent's counsel's billing records are included in the record on appeal and they show that from February 1, 2002, through December 7, 2023, counsel billed respondent for a variety of work unrelated to any specific hearings, including for: reviewing and responding to emails regarding therapy; holding a strategy meeting regarding settlement; revising the proposed allocation judgment; drafting a motion to set trial dates; conducting a telephone call with respondent as to "next steps'"; reviewing the invoice from the GAL; reviewing and responding to respondent's email regarding pensions; reviewing a pension report and updated pension valuation; reviewing an American Express subpoena response; reviewing emails and conducting a telephone call with the GAL regarding the allocation judgment; and reviewing and organizing discovery from opposing counsel.

¶ 54    The trial court exceeded its authority under the second prong of section 508(b) when it ordered petitioner to pay 60% of all such fees that were unrelated to any specific hearing precipitated or conducted for an improper purpose. Accordingly, we vacate the attorney fee award and remand for a new hearing on respondent's petition for attorney fees under section 508(b), at

which any fees awarded will be limited to those incurred as a result of a hearing under the Marriage Act that was precipitated or conducted for an improper purpose.

¶ 55     Next, petitioner argues that the court erred by reallocating the GAL fees and requiring her to pay 55% of all such fees retroactive from the date of his appointment, a total of $15,651.08. The trial court's ruling on how to allocate the GAL's fees between the parties will not be reversed on appeal absent an abuse of discretion. *In re Estate of K.E.S.*, 347 Ill. App. 3d 452, 468 (2004). An abuse of discretion occurs when the court's ruling was arbitrary, fanciful, or unreasonable or when no reasonable person would have taken the view adopted by the trial court. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 56     Section 506 of the Marriage Act (750 ILCS 5/506 (2022)) grants the trial court the authority to appoint a GAL for a minor child in a dissolution proceeding, to award fees to the GAL, and to allocate the payment of those fees between the parties. See *In re Marriage of Soraparu*, 147 Ill. App. 3d 857, 864 (1986). When deciding the proper amount of fees to be awarded to the GAL, the court considers a number of factors, including: the parents' circumstances; the importance, novelty, and difficulty of the issues raised; the time and labor required; the usual and customary charge in the community; and the benefits to the client. *Id.* When deciding upon the proper allocation of fees between the parties, the court also considers the financial resources of the parties and whether the fees were the result of actions of one or both parties. *In re Marriage of Patel and Sines-Patel*, 2013 IL App (1st) 112571, ¶¶ 147-48.

¶ 57     When appointing the GAL in the instant case and allocating his fees between the parties, the court originally ordered respondent to pay 75% of his fees and for petitioner to pay the remaining 25%. On November 7, the court entered its order finding that the original allocation order was too one-sided because "each party" had played a role in litigating parenting issues and

because, contrary to her testimony that she had followed all of the GAL's recommendations, petitioner's "actions served to slow down Respondent's ability to have parenting time and to have overnight parenting time." In effect, the court found that petitioner was slightly (55%) more responsible for the GAL's fees because her failure to follow his recommendations led to further litigation by respondent to enforce his parenting rights. The court reallocated the fees so as to require petitioner to pay 55% of them retroactive to the GAL's initial appointment.

¶ 58    On appeal, petitioner does not argue that the court erred in effectively finding that she was slightly more responsible for the GAL's fees due to her failure to follow all of his recommendations, which resulted in litigation to enforce respondent's parenting time. She argues only that since respondent earns more money than her, he should be ordered to pay the majority of the GAL's fees.

¶ 59    The record on appeal indicates that petitioner can afford to pay 55% of the GAL's fees ($15,651.08) as ordered by the trial court, because she earns $5,333 per month ($63,996 per year) according to the income imputed to her in the marital settlement agreement, and she also has an estate valued at over $685,000 as of July 2022. Given the court's finding that the GAL's fees were primarily the result of petitioner's actions and that she has the financial resources to pay them, we find no abuse of discretion by the trial court's order requiring her to pay 55% of those fees retroactive to the GAL's appointment.

¶ 60    Petitioner argues, though, that the court's November 27, 2023, order reallocating the GAL's fees was internally inconsistent, in that it first stated that the court would not reallocate the GAL's fees prior to February 1, 2022, but subsequently reallocated his fees retroactive to the date of his appointment on March 22, 2019. Careful review of the court's order reveals that the court was discussing only the award of attorney fees when it stated that it would "reallocate the fees for

the period commencing from February 1, 2022 forward." The court never stated that the GAL's fees would be similarly reallocated only for the period from February 1, 2022, forward. We find no internal inconsistency.

¶ 61    For all the foregoing reasons, we vacate respondent's award of attorney fees and remand for a new hearing on his section 508(b) petition. We affirm the award of the GAL fees. As a result of our disposition of this case, we need not address the parties' other arguments on appeal regarding the reasonableness of the attorney fees awarded.

¶ 62    Affirmed in part, vacated in part, and remanded for further proceedings consistent with this order.